UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:11-CV-00050-JHM

TRINITY CONTRACTING OF
BOWLING GREEN, LLC                                                                        PLAINTIFF

V.

WESTFIELD INSURANCE COMPANY                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross motions for partial summary judgment by Defendant Westfield Insurance Company [DN 14] and by Plaintiff Trinity Contracting of Bowling Green, LLC [DN 16]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

Plaintiff Trinity Contracting is a general contractor who bid on, and was subsequently awarded, a contract to complete a water line project for the North Logan Water District in Russellville, Kentucky (the "Project"). (Cates Aff. ¶ 4.) In connection with this contract, Plaintiff was required to provide a payment and performance bond on the Project as well as to secure a general liability insurance policy for the Project. (Id. at ¶¶ 4-5.) Defendant Westfield Insurance Company issued a commercial package policy, numbered TRA4370130 (the "Policy"), to Plaintiff with effective dates of June 30, 2008 to June 30, 2009. (Id. at ¶ 6.)

After winning the contract, Plaintiff retained Wrenn Excavating as a subcontractor to perform the actual work on the Project. (Def.'s Mem. in Supp. of Mot. Summ. J. 2.) The necessary materials for the Project were purchased and paid for by Plaintiff and then delivered to a staging area near the Project work site. (Cates Aff. ¶ 8.) Once delivered, the materials were inventoried and Plaintiff was

reimbursed for the cost of the materials by North Logan Water District.[1] (Id. at ¶ 9.) While Wrenn was hired to perform the work on the water line, Plaintiff retained "exclusive access and control of the Project site including the staging area" during the entire contract performance. (Id. at ¶ 10.)

Around May 2009, Plaintiff became unsatisfied with its subcontractor and dismissed Wrenn, choosing to finish the remaining work on the Project itself. Once Plaintiff began to finish the remaining work, it discovered that many of the materials it had purchased and inventoried at the storage site were missing. (Id. at ¶ 12.) After making this discovery, Plaintiff conducted an inventory of its remaining materials and compiled a list of the missing items. (Id.) The total cost of the missing materials was $19,408.28. (Id.) Thereafter, Plaintiff filed a report with the Logan County Sheriff's Office for the theft of the materials. (Id. at ¶ 15.) It appears that the investigation is ongoing but that there have been no arrests made. (See Pl.'s Supp. Ex. C [DN 17], Logan County Sheriff's Dept. Report 2-3.)

Following these actions, Plaintiff filed a claim with Defendant under the Policy for the cost of the stolen materials. Defendant denied the claim. Plaintiff filed the instant suit alleging several claims including breach of contract. The Parties have now filed cross motions for partial summary judgment seeking to have the breach of contract claim adjudicated.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its

---

[1] Under the Project contract, ownership and title to the materials did not transfer to North Logan Water District until the materials were installed and accepted by North Logan Water District. (Cates Aff. ¶ 11.)

motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

The issues raised in the parties' motions for summary judgment are governed by the principles of contract interpretation. The interpretation of an insurance contract is a question of law for the Court to decide. Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 871 (Ky. 2002); Equitania Ins. Co. v. Slone & Garrett, P.S.C., 191 S.W.3d 552, 556 (Ky. 2006). "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." Logan Fabricom, Inc. v. AOP P'ship LLP, 2006 WL 3759412, at *2 (Ky. Ct. App. Dec. 22, 2006). "[I]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A.

Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003) (quotation and citation omitted); see also York v. Ky. Farm Bureau Mut. Ins. Co., 156 S.W.3d 291, 293 (Ky. 2005) ("The clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning."). However, "[i]f the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured." Wolford v. Wolford, 662 S.W.2d 835, 838 (Ky. 1984). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).

     As the Kentucky Supreme Court states "[t]he reasonable expectation doctrine 'is based on the premise that policy language will be construed as laymen would understand it' and applies only to policies with ambiguous terms - e.g., when a policy is susceptible to two or more reasonable interpretations." True v. Raines, 99 S.W.3d 439, 443 (Ky. 2003) (quoting Simon v. Cont'l Ins. Co., 724 S.W.2d 210 (1986)). If an ambiguity does exist, "the ambiguous terms should be interpreted in favor of the insured's reasonable expectations. However, 'the mere fact that a party attempts to muddy the water and create some question of interpretation does not necessarily create an ambiguity.'" Id. (quoting Sutton v. Shelter Mut. Ins. Co., 971 S.W.2d 807, 808 (Ky. 1997)).

     The Policy at issue provides that Defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declaration caused by or resulting from any Covered Cause of Loss." (Def.'s Mem. in Support of Mot. Summ. J., Ex. 2 Commercial Property Policy, Building and Personal Property Coverage Form CP 00 10 04 02(A) (hereinafter "Coverage Form")). Covered Property includes raw materials "located in or on the building described in the Declarations or in the open . . . within 100 feet of the described premises[.]" (See Coverage Form A(1)(b)(3), H(3).) It is undisputed that the materials at the storage site location do not qualify for coverage under this provision, as the storage site is more than 100 feet from the described premises.

(Def.'s Mem. in Support of Mot. Summ. J. 4.) Furthermore, the storage site does not qualify for coverage under a provision extending coverage to materials within 1,000 feet of the described premises. (Id.) Accordingly, coverage in the instant case is dependent on the applicability of the Property Off-Premises extension. (See Coverage Form A(5)(d).)

The Property Off-Premises provision extends coverage to Plaintiff's "Covered Property while it is away from the described premises, if it is: [t]emporarily at a location [Plaintiff] do[es] not own, lease or operate." (Coverage Form A(5)(d)(a).) Defendant contends that the materials located at the storage site are not covered under this provision because they were not "temporarily" located there and because the storage site was a location that was "operated" by Plaintiff. The Court will first address whether Plaintiff "operated" the storage site. Because the term "operate" is not defined under the Policy, the Court will interpret the term according to its ordinary meaning. See Frear, 103 S.W.3d at 99. While the term "operate" has several definitions, under these circumstances, the best definition is as follows: "to put or keep (a factory, industrial system, ranch, etc.) working or in operation: *to operate a coal mine*." Random House Unabridged Dictionary 1357 (2d ed. 1993) (emphasis in original).

Plaintiff boldly states, on multiple occasions, that it had possession, exclusive rights and access to, and control of the storage site and Project site during the entire performance of the contract. (See Cates Aff. ¶ 10, Pl.'s Mem. in Support of Mot. Summ. J. 3, 7.) The facts before the Court demonstrate that Plaintiff had exclusive control of the site at issue and that it was responsible for the work at the location. In fact, when the work was not being completed to its satisfaction, Plaintiff discharged its subcontractor and assumed the remaining work. Furthermore, Plaintiff took out a performance bond on the Project, guaranteeing that the work would be completed as required and on time. Under these circumstances, the Court finds that Plaintiff was in charge of keeping the Project

site working, or in operation. Given Plaintiff's admission that it had exclusive control and access to the site, and its exercise of that power to evict Wrenn, there is no other conclusion that can be drawn. The Court finds that under the terms of the Policy, the materials at the storage site were at a location operated by Plaintiff. Therefore, the loss of the materials is not covered under the Property-Off Premises provision.[2]

Plaintiff having relied solely upon this provision to establish coverage under the Policy, and the Court having found this provision does not apply, Defendant is entitled to partial summary judgment as to the breach of contract claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Westfield Insurance Company's Motion for Partial Summary Judgment [DN 14] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Trinity Contracting of Bowling Green, LLC's Motion for Partial Summary Judgment [DN 16] is **DENIED**.

cc: counsel of record

---

[2] As this is dispositive of the current issue, the Court makes no ruling regarding the Defendant's remaining arguments.